IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SUZANNE CLARY                                                                                       PLAINTIFF

V.                                             NO. 13-3036

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Suzanne Clary, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current application for SSI on June 2, 2011, alleging an inability to work since September 6, 1989, due to mental problems, depression, ADHD, borderline IQ, and seizures. (Tr. 157-164, 181, 185). An administrative hearing was held on August 23, 2012, at which Plaintiff appeared with counsel, and she and her ex-husband testified. (Tr. 28-59).

By written decision dated November 15, 2012, the ALJ found that Plaintiff had an

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

impairment or combination of impairments that were severe - seizures and a mood disorder. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks; respond to usual work situations and routine work changes and to supervision that is simple, direct, and concrete; the claimant can occasionally interact with supervisors and co-workers, but should not interact with the public; and the claimant must avoid hazards including unprotected heights and heavy moving machinery.

(Tr. 14-15). With the help of the vocational expert (VE), the ALJ determined that Plaintiff had no past relevant work, but that there were jobs Plaintiff would be able to perform, such as housekeeper, machine tender, and inspector/tester. (Tr. 20-21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 31, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 16).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**I.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in his RFC determination; 2) The ALJ erred in finding Plaintiff's impairments did not meet or equal a listing; and 3) The ALJ's decision is not supported by substantial evidence. (Doc. 12).

### A.   RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642,

646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff argues that the ALJ erred when he failed to account for the findings of Drs. Brown and Bunting, as well as the observations of treatment providers at Vista Health.

It is noteworthy that in this case, records of Plaintiff's medical treatment other than those directed by the Commissioner begin on January 6, 2006, long before June 2, 2011, the application date. Nevertheless, the ALJ reported that he considered the complete medical history, consistent with 20 C.F.R. 416.912(d). (Tr. 10).

Plaintiff was treated for mental health issues at Vista Health on January 6, 2006 (Tr. 489-492); April 7, 2006 (Tr. 494-495); and February 17, 2007. (Tr. 572-573, 585-589). She was treated for intentional overdose at North Arkansas Regional Medical Center on August 8, 2010. (Tr. 334-354). In addition, on December 6, 2010, Plaintiff was admitted to Baxter Regional Medical Center after taking too many pills. (Tr. 376-381).

On June 30, 2011, Vann Smith, Ph.D., conducted a Neuropsychological Evaluation. (Tr. 300-303). On July 6, 2011, Dr. Smith completed a Mental RFC Questionnaire, wherein he concluded that Plaintiff had severe limitations and would miss more than four days of work per month. (Tr. 270). He found Plaintiff had a current GAF of 35. (Tr. 267).

On October 26, 2011, Dr. Anandaraj Subramantum conducted a General Physical Examination, where he noted that Plaintiff denied being on any medication. (Tr. 495). He also found that Plaintiff's range of motion in all extremities was normal. (Tr. 500). He diagnosed Plaintiff as follows:

> 1. Hx Bipolar Disorder

       2. Hx of Suicidal in past
       3. Borderline Personality Disorder

(Tr. 502). Dr. Subramantum concluded that Plaintiff needed to be evaluated by a psychiatrist.

On November 1, 2011, a Mental Status and Evaluation of Adaptive Functioning was performed by Nancy A. Bunting, Ph.D. (Tr. 517-524). Dr. Bunting concluded that Plaintiff was not a reliable informant, and discussed in great detail the many inconsistent statements Plaintiff gave to Dr. Bunting and other health care providers. (Tr. 522). Dr. Bunting also concluded that given Plaintiff's level of unreliability, her reports of pain should be evaluated carefully. (Tr. 522). Dr. Bunting took issue with Dr. Smith's statement that Plaintiff's judgment and insight were intact. (Tr. 522). She pointed out that Plaintiff could do all of her self-care skills, smoked two cigarettes daily, and drank a pot of coffee and four 20-oz. bottles of Mountain Dew daily. (Tr. 523). Plaintiff also performed regular chores, such as washing dishes, doing laundry, sweeping, vacuuming and cooking. Plaintiff spent her time watching television, doing housework, listening to radio and music, reading, using facebook, and spending up to 8 hours playing Monsterville. (Tr. 523). Dr. Bunting found that Plaintiff communicated and interacted in a socially adequate manner; communicated in an intelligible and effective manner; had little ability to cope with the typical mental/cognitive demands of basic work-like tasks if she had made her best effort; that she could handle some work stress or change if she was not using drugs; and that she could follow instructions. (Tr. 523). Dr. Bunting found Plaintiff had the ability to attend and sustain her concentration on basic tasks, had some ability to sustain persistence in completing tasks, and was able to persist with things that interested her. (Tr. 523). She also had some ability to complete work-like tasks within an acceptable timeframe. (Tr. 524).

Dr. Bunting concluded that Plaintiff's effort was minimal and her cooperation was superficial, and that Plaintiff could not handle funds by herself. (Tr. 524).

On November 3, 2011, non-examining consultant, Dr. Stephen A. Whaley, completed a Physical RFC Assessment form, finding that Plaintiff had no exertional limitations, but that she should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation and hazards (machinery, heights, etc.). (Tr. 509, 512).

On November 8, 2011, non-examining consultant, Jon Etienne Mourot, Ph.D., completed a Psychiatric Review Technique form and a Mental RFC Assessment. (Tr. 529-541, 543-545). Dr. Mourot found that Plaintiff had a mild degree of limitation in restriction of activities of daily living and in maintaining social functioning, and had a moderate degree of limitation in difficulties in maintaining concentration, persistence, or pace. (Tr. 539). Dr. Mourot noted that regarding Plaintiff's seizures, the consultative examiner correctly pointed out that there was no independent, objective documentation of a seizure disorder. (Tr. 545). Dr. Mourot concluded that it appeared Plaintiff was able to perform work where interpersonal contact was incidental to work performed, where complexity of tasks was learned and performed by rote, where tasks had few variables and required little judgment, and where supervision required was simple, direct, and concrete, concluding that Plaintiff could perform unskilled work. (Tr. 545).

After the hearing held before the ALJ, on September 12, 2012, Plaintiff was seen by Philip Brown, Ph.D. (Tr. 563-569). Dr. Brown noted that Plaintiff had been cutting her wrists again for a couple of months. (Tr. 563). Plaintiff reported to Dr. Brown that she ate all the time, but was bulimic. (Tr. 564). She reported that she was hearing voices since she quit taking Prozac four months prior, and that before she discontinued taking the Prozac she was not hearing the

voices. (Tr. 564). Plaintiff told Dr. Brown that she had taken no form of medication in the previous four months, because she could not afford it. (Tr. 565). She indicated the only substance she used was alcohol and "marijuana, but it's once in a blue moon. I haven't smoked pot in three months." (Tr. 567). She said she consumed alcohol "about once a week," and when she drank, it was typically to the point of intoxication. (Tr. 567). Dr. Brown assessed Plaintiff as follows:

> Axis I:     Impulse-control disorder nos
>             Depressive disorder nos
> Axis II:    Personality disorder nos
> Axis III:   Hepatitis C, epilepsy, obesity, asthma
> Axis IV;    Problems with primary support group, problems related to the social environment, occupational problems, educational problems, economic problems
> Axis V:     GAF - 50 (current)

(Tr. 568). Dr. Brown reported that most of Plaintiff's psychiatric symptoms did not appear to be severe in nature or to significantly impact her functioning in a negative manner. However, he found that some of her symptoms did have a negative impact on her functioning - "it is clear her psychiatric symptoms impact her abilities to manage her behavior in ways that would be conducive to her establishing and maintaining healthy relationships and becoming gainfully employed." (Tr. 568). Dr. Brown found that Plaintiff's symptoms of depression appeared to have been reasonably managed for most of the past four years by Prozac, and that since not taking her medication, she had experienced a more pronounced state of depression, the re-emergence of self-abusive behavior in the form of cutting, the recurrence of auditory hallucinations, increased irritability, and outbursts of anger. (Tr. 569). He found that anger and impulsivity were two symptoms that would "almost certainly preclude her from securing and

maintaining gainful employment." (Tr. 569).

Dr. Brown also completed a Mental RFC Questionnaire, although he failed to answer the question relating to the frequency and length of contact. (Tr. 557). He did not believe Plaintiff had a low IQ or reduced intellectual functioning, but that she would miss more than four days per month. (Tr. 559-560).

As noted by Defendant, the lack of any specialized mental health treatment received during the relevant time period undermines Plaintiff's claims of disability. Nevertheless, the ALJ considered the medical evidence before the relevant time period and concluded she had a severe mood disorder.

With respect to Dr. Brown's evaluation, the ALJ addressed his findings, noting that Dr. Brown diagnosed Plaintiff with the diagnoses of impulse control disorder, NOS; depressive disorder, NOS: and personality disorder, NOS. (Tr. 17). The ALJ also noted the inconsistent stories Plaintiff told the various health care providers regarding what drugs she had taken, reporting that Plaintiff reported to evaluators with the UAMS Department of Pediatrics in December of 2006 that she had used marijuana, methamphetamine, cocaine, ecstasy, and LSD, but reported to Dr. Brown that the only drugs she had ever used were alcohol, marijuana, methamphetamines, and pain pills, and reported only "occasional" use of alcohol to Dr. Smith in June of 2011. (Tr. 17-18). The ALJ afforded little weight to Dr. Brown's opinion, as he found Plaintiff provided Dr. Brown with what appeared to be inaccurate information, and that Dr. Brown's examination was performed through an attorney referral in an effort to generate evidence for Plaintiff's application. (Tr. 19-20).

With respect to Dr. Bunting's evaluation, the ALJ noted that Plaintiff reported to Dr.

Ronald Clements that she had two sons and one daughter in August of 2010, but reported to Dr. Smith and Dr. Bunting in November of 2011 that she had no children. (Tr. 17). When Dr. Bunting questioned Plaintiff further about having had no children, Plaintiff then reported that she had a set of twins who died at birth only. (Tr. 17, 518). The ALJ also noted that Plaintiff provided inconsistent information when she reported to Dr. Lloyd that she had been sentenced to one year of probation for terroristic threatening and to Dr. Bunting that she had been charged with terroristic threatening, but that the charges were dropped. (Tr. 18, 519).

  The ALJ discussed the fact that Dr. Bunting found Plaintiff to be very uncooperative and difficult, that she was "superficially and reluctantly" cooperative during her evaluation, and was "NOT" a reliable informant. (Tr. 19, 522). The ALJ concluded that it appeared that Plaintiff attempted to use Dr. Bunting's examination as an opportunity to generate inaccurate evidence and found Plaintiff's unwillingness to assist in the production of a complete and accurate record to be detrimental to her overall credibility. (Tr. 19). The ALJ afforded Dr. Bunting's opinions some but not substantial weight, based upon Plaintiff's apparent provision of inconsistent information and her failure to fully participate in the evaluation. (Tr. 20).

  With respect to the opinions of the treatment providers at Vista Health, as noted earlier, Plaintiff's treatment at Vista Health occurred in 2006 and 2007, several years before the relevant date of June 2, 2011. Nevertheless, it is clear that the ALJ considered all of the medical records in this case, because he addressed the fact that Plaintiff reported to evaluators with the UAMS Department of Pediatrics in 2006 that she had a history of special education classes in Math and English and that she was retained in kindergarten, 1st grade, and 7th grade. (Tr. 16, 283) The ALJ also discussed the 2006 diagnoses of Dr. Richard Lloyd, who was with Vista Health. (Tr. 17).

The ALJ also noted Plaintiff's prior inconsistent statements to Dr. Lloyd and Dr. Bunting regarding her terroristic threatening charge. (Tr. 18).

As an added note, Plaintiff's daily activities support the ALJ's RFC. She is able to take care of her personal needs, prepare meals, do the laundry and dishes, go to church on a regular basis, read, watch television, write, listen to music every day, and to play games on the computer. (Tr. 220-223, 523). In addition, she reported smoking two cigarettes daily, and drinking a pot of coffee and four 20-oz. bottles of Mountain Dew daily. (Tr. 523).

It is clear that the ALJ considered all of the medical records in this case as well as Plaintiff's complaints, and gave sufficient reasons for giving the weight he gave to the various opinions. Consequently, the Court finds there is substantial evidence to support the ALJ's RFC determination.

  **B.**  **Whether Plaintiff's Impairments Meet or Equal a Listing:**

Plaintiff argues that Plaintiff's impairments meet or equal Listing 12.04. "The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id. "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010)(quoting from Sullivan v. Zebley, 493 U.S. 521, 531 (1990)). "[W]hen determining medical equivalency, an impairment can be considered alone or in combination with other impairments." Carlson, 604 F.3d at 595.

The ALJ found that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, and 12.09. (Tr. 13). He followed the

-11-

approach for evaluating Plaintiff's alleged mental impairments at step three. See 20 C.F.R. § 416.920a.

One of the requirements to satisfy 12.04 is that there must be a marked restriction of activities of daily living or in maintaining social functioning or in maintaining concentration, persistence, or pace or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt P, App 1, 12.04B. In his analysis, the ALJ found that in activities of daily living, Plaintiff had a mild restriction; in social functioning, Plaintiff had mild difficulties; with regard to concentration, persistence or pace, Plaintiff had moderate difficulties; and as for episodes of decompensation, Plaintiff had no episodes of decompensation, which have been of extended duration within the relevant timeframe. (Tr. 13-14). These findings are consistent with the ALJ's decision to give Dr. Brown's opinion little weight, Dr. Bunting's opinion some, but not substantial weight, and the non-examining agency consultants' opinions great weight, although he further reduced Plaintiff's RFC, based upon additional evidence received at the hearing level. (Tr. 20).

Although Dr. Smith and Dr. Brown found Plaintiff had some severe limitations, after reviewing the entire record as a whole, the ALJ gave more weight to the opinion of Dr. Bunting, who pointed out numerous inconsistencies in Plaintiff's statements to all of the providers and concluded that Plaintiff's statements regarding her history were unreliable. Although Dr. Bunting found Plaintiff had little ability to cope with the typical mental/cognitive demands of basic work-like tasks if she made her best effort, Dr. Bunting also found that Plaintiff had the ability to attend and sustain her concentration on basic tasks; had some ability to sustain persistence in completing tasks and to persist with things that interested her; and had some ability

to complete work-like tasks within an acceptable timeframe. (Tr. 523). The ALJ concluded that, considering the evidence in the light most favorable to Plaintiff, Plaintiff had no more than moderate difficulties in her ability to maintain concentration, persistence, or pace.

The Court finds there is substantial evidence to support the ALJ's findings that Plaintiff did not suffer from a marked restriction or difficulty in the relevant functional areas, and that she did not have repeated episodes of decompensation.

With respect to Listing 12.05, relating to mental retardation, although in 2006, Plaintiff was diagnosed with mild to moderate range of mental retardation (Tr. 283, 292), the medical records during the relevant time period do not reflect such a diagnosis. Nor did Plaintiff allege mental retardation in her application. Neither Dr. Bunting nor the state agency physicians diagnosed Plaintiff with mental retardation, and Plaintiff did not produce any IQ scores to substantiate a diagnosis of such.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairment did not meet a Listing.

    C.    **Whether the ALJ's Decision is Supported by Substantial Evidence:**

Plaintiff generally argues that there is no substantial basis for the ALJ's findings at steps three and five. However, based upon the discussion above, as well as the reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff has not been under a disability, as defined in the Act, since June 2, 2011, the date the application was filed.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence

AO72A
(Rev. 8/82)

supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 6th day of May, 2014.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE